IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MICHAEL PARDUE,                          *
                                         *
        Plaintiff,                       *
                                         *
vs.                                      *     CASE NO: CV-99-0799-RV-M
                                         *
MOBILE COUNTY, ALABAMA;                  *
BALDWIN COUNTY, ALABAMA;                 *
CITY OF SARALAND, ALABAMA,               *
a municipal corporation; FRANK           *
MANN, Individually; A. D. 'COTTON'       *
LONG, Individually; WILLIS               *
HOLLOWAY, Individually; CHARLIE          *
GRADDICK, Individually; TOM              *
HARRISON, Individually; MARION           *
SENNETT, Individually; CHANDLER          *
K. STANARD, Individually; MIKE           *
DAVIS, Individually; ED LEMLIER,         *
Individually; JIM HENDRIX,               *
Individually; J. DAVID WHETSTONE,        *
Individually; and JUDY A.                *
NEWCOMB, Individually,                   *
                                         *
        Defendants.                      *     **TRIAL BY JURY DEMANDED**


AMENDED COMPLAINT

Comes now the Plaintiff, Michael Pardue, and amends his Complaint by adding

claims identified below and by adding newly named Defendants, alleging as follows,

to-wit:

## PARTIES

1.  Michael Pardue is over the age of nineteen (19) years and resides as an inmate under the control of the Alabama Department of Corrections located in St. Clair County, Alabama.

2.  Mobile County and Baldwin County are political subdivisions of the State of Alabama.

3.  City of Saraland is a municipal corporation located in Mobile County, Alabama.

4.  Frank Mann is over the age of nineteen (19) years, is a resident citizen of Mobile County, Alabama and in 1973 was an officer and employee of the City of Saraland Police Department and later became Chief of Police and eventually became Mayor of the City of Saraland.

5.  A. D. "Cotton" Long is over the age of nineteen (19) years, is currently employed by the Baldwin County Sheriff's Department and is a resident citizen of Baldwin County, Alabama. Long was employed as an investigator for Baldwin County in 1973.

6.  Charlie Graddick is over the age of nineteen (19) years, is a resident citizen of Mobile County, Alabama and was an Assistant District Attorney for Mobile

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 2

County in 1973 and is now in private practice.

7.     Tom Harrison is over the age of nineteen (19) years, served as an Assistant District Attorney for Mobile County in 1995 and is a resident citizen of Mobile County, Alabama.

8.     Marion Sennett is over the age of nineteen (19) years and was Assistant Forensic Specialist in 1973. Sennett is a resident citizen of Mobile County, Alabama and is now retired.

9.     Chandler K. Stanard is over the age of nineteen (19) years and is a resident citizen of Mobile County, Alabama. Stanard was the court appointed attorney representing Pardue in 1973 in Pardue's criminal trial(s).

10.     Mike Davis is over the age of nineteen (19) years and is a resident citizen of Mobile County, Alabama. In 1995 Davis was an Assistant District Attorney for Mobile County, and is now in private practice.

11.     Ed Lemlier is over the age of nineteen (19) years and is a resident citizen of Mobile County, Alabama. In 1995 Lemlier was an investigator for the Mobile County Sheriff's Department.

12.     Willis Holloway is over the age of nineteen (19) years and is a resident citizen of Mobile County, Alabama. In 1973 Holloway was an Assistant District

Attorney for Mobile County.

13.   Jim Hendrix is over the age of nineteen (19) years and is a resident citizen of Baldwin County, Alabama.  In 1973 Hendrix was the District Attorney for Baldwin County, Alabama.

14.   J. David Whetstone is over the age of nineteen (19) years and is a resident citizen of Baldwin County, Alabama.  Whetstone is currently serving as the District Attorney for Baldwin County and has so served in that capacity for over ten (10) years.

15.   Judy Newcomb is over the age of nineteen (19) years and is a resident citizen of Baldwin County, Alabama.  Newcomb is currently Chief Assistant District Attorney for Baldwin County and has so served in that capacity or in another capacity with the District Attorney's Office for at least five (5) years.

<u>JURISDICTION</u>

16.   This action arises under the constitution of the United States and under 42 U.S.C. §§ 1983 as hereinafter more fully appears.  State law claims alleged herein are ancillary to the Federal claims.  This is an action for damages to redress the deprivations of rights secured under the Constitution and statutes of the United States and other laws of the State of Alabama.

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 4

17.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(3).  The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.   Additionally, this Court has pendant jurisdiction to address the deprivation of rights of Plaintiff under the common law and laws of the State of Alabama.

## VENUE

18.     The Southern District of Alabama is the location where the events occurred and where the Defendants are located.  Hence, this District is where venue lies.

## STATEMENT OF FACTS

19.     Plaintiff Michael Rene Pardue was arrested, charged, tried, convicted and sentenced to serve consecutive life sentences for three (3) counts of Capital Murder and three (3) counts of Grand Larceny in 1973.  Pardue was seventeen (17) years of age at the time of the alleged murders.

20.     The first murder victim was Ronald Rider whose body was found by the Mobile County Sheriff's Office at approximately 2:00 a.m. on May 22, 1973.  Rider, a service station attendant, had been killed at the Thoni Service Station on the Causeway near Mobile in Baldwin County.  At approximately 6:00 a.m. that morning,

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 5

a motorist found the body of service station owner Will Harvey Hodges, the second murder victim, at his Double A Service Station in Mobile County, Alabama.

21.    Pardue has filed a claim with the governmental Defendants as required by State law and all procedural conditions have been satisfied prior to filing this civil action. Should Pardue prevail in the civil action such an outcome would substantially impact the wrongful criminal convictions of Pardue which have now been nolle prossed.

A.    THE MURDERS

22.    According to the official report issued by the Department of Toxicology and Criminal Investigation of the State of Alabama, Baldwin County Chief Investigator Bobby Stewart reported that Ronald Rider appeared to have been killed with a crowbar. An order for autopsy was issued by District Attorney Hendrix, however, police officers allowed Rider's body to be removed from the scene and transported to a funeral home where it was washed and embalmed prior to any forensic examination. Upon examination, Nelson E. Grubbs, now deceased, reported a triangular abrasion one inch by three-fourths inch along the left face along the line of Rider's jaw. Grubbs further reported fifty small holes were found, some of which penetrated the left ear lobe, with the overall pattern approximately two inches by two

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 6

and one-half inches.  Rider's certificate of death, signed by a medical doctor who never appeared at any trial or hearing,  reports the cause of death as "trauma of head with blunt instrument, shot gun wound".  The certificate of death further reports that "victim struck on head with crowbar, then shot during robbery".   During habeas proceedings, evidence substantially established that the bullet holes to Rider's head could not have been caused by the alleged murder weapon seized from J. B. Duncan.

23.    According to the report initiated by Grubbs and issued by the Department of Toxicology and Criminal Investigation of the death of Will Harvey Hodges, the evidence revealed that two (2) shots had been fired and that "there had to be two people present at the incident when Hodges was shot".

B.    PARDUE'S INTERROGATION

24.    In 1973, Michael Pardue was seventeen (17) years old and had been the victim of an abusive father for as long as he could remember.  At the age of four (4), his father broke his arm in two (2) places in one of his violent outbursts against Pardue.  Moreover, Pardue was present at the murder of his mother by his father approximately one year prior to the murders of Rider and Hodges.  The individual Defendants, their agents, officers and employees knew, or should have known, of Pardue's history and the vulnerable position Pardue assumed when interrogated in

1973.

25.    In the early morning hours of May 23, 1973, Pardue was trying to find a tire to go on his car.  In the City of Saraland, his new acquaintance, John Brown, was at a motel and nearby was a mechanic's garage.  Pardue took several of the tires which did not fit his vehicle.  He then stole the truck that was on the property of the garage.  Pardue and Teresa Lanier rode around in the truck until it became stuck near the river.  Unable to extricate it, Pardue walked to the Scott Paper Company parking lot and stole a Volkswagen, returning with Teresa Lanier to the motel.  Pardue slept in the station wagon belonging to John Brown until morning.

26.    When Pardue arrived at this grandmother's house the next morning, he learned the Saraland police wanted to talk with him.  Pardue assumed it concerned the truck and Volkswagen.  Pardue voluntarily went to the Saraland Police Department to confess to falsely reporting his car stolen that morning as he had stolen two tires, a truck and a car the night before as described above.  Upon arriving at the police station, Pardue waited for about an hour and was then taken into a storage room and seated by a desk.

27.    After a while, three (3) grown men, each standing over six feet tall and each weighing over two hundred pounds, burst into the room throwing the door

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 8

against the wall and began talking at him in a rough and threatening manner. The men did not identify themselves, but Pardue later learned their names were: William Travis, Chief Detective for Mobile County Sheriff's Department, "Cookie" Estes and Albert Strohe.

28. Before any questions were asked of Pardue, he was told in a mean, hateful and threatening manner: "You're a vicious little son of a bitch and an animal. What the fuck did you blow their heads off for"; and, "they can't see their families again because you shot their heads off." Pardue became very quiet and subdued out of fear and William Travis spoke to him in a level voice as Estes and Strohe bickered in the background about how to eliminate Pardue and give him what he deserved. Travis then began talking to Pardue by saying: "We know you did it and you are going to tell us all about it."

29. This started what became an unlawful, illegal and unconstitutional interrogation of Pardue. All officials present knew or should have known that the interrogation became unlawful, illegal and unconstitutional. During the seventy eight (78) hours of interrogation that followed, Pardue was beaten, starved, tortured, subjected to emotional abuse and physical abuse and deprived of sleep, the ability to call his family or to talk to a lawyer. Two (2) lawyers were sent to the Saraland

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 9

Police Department specifically to talk to Pardue but were turned away and intimidated by officials from the Saraland Police, the Mobile City Police, the Mobile Sheriff's Department and/or the Baldwin County Sheriff's Office and one Assistant District Attorney from Mobile County, and were otherwise refused entrance to speak with Pardue.  At the end of the seventy-eight (78) hour interrogation, Pardue falsely confessed to the killings of Rider, Hodges and even to a third man, Theodore White. The skeletal remains of White had been found in a rural north Mobile County area during the time of the interrogation.  White's cause of death is listed on his autopsy report as "undetermined".

30.    Travis, Estes and Strohe were hired by the Mobile County Personnel Board which had the authority to discipline, dismiss, suspend and/or demote them. They did not have any evidence that Pardue had committed any murder when they arrived to interrogate him at the Saraland Police Department.  Nonetheless, they initiated the unlawful, illegal and unconstitutional interrogation with intimidation and threats as described hereinabove.

31.    The interrogation was orchestrated and conducted by William Travis, who was hired by the Mobile County Personnel Board which had the authority to discipline, dismiss, suspend and/or demote and who was well-known among law

enforcement officers and others for his brutality and for producing a confession without evidence after a body was found. During the course of the interrogation, a number of officers from the Defendant jurisdictions participated in an "investigation" of the murders as is described with more particularity below. The "investigation" was nothing more than a concerted effort arising out of a conspiracy to frame or otherwise illegally pin responsibility for the murders on Pardue. Bobby Stewart and "Cotton" Long participated in the interrogation and/or "investigation" on behalf of Baldwin County as is described with more particularity below.

C.    THE INVESTIGATION

32.    Among other things, during the course of the so-called investigation, Defendants Holloway, Mann and Creekmore, along with Frank Pridgen, conducted a weapons search which concluded with them going to the home of J. B. Duncan whereupon they found a cobwebbed, dusty shotgun which they confiscated under false pretenses. Later this shotgun was cleaned and fired by these Defendants and possibly others, then alleged to be the murder weapon of Rider and Hodges, and possibly even White. At the time these Defendants confiscated said shotgun and cleaned and fired it, they had actual knowledge that this shotgun could not have possibly been the murder weapon, however, they continued to allege that Pardue used

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 11

this weapon in committing the aforementioned murders.

33.   In addition to manufacturing evidence that the shotgun was the murder weapon, other wrongful acts committed by the Defendants identified in Paragraph 43 below during the course of the so-called investigation include the planting of evidence in John Brown's car, the endorsement of dubious evidence by law enforcement personnel, the ignoring, hiding or destroying of exculpatory evidence, the willingness to commit and/or aid perjurious testimony, and the failure to investigate evidence of other strong suspects.

D.   PARDUE'S TRIAL

34.   The capital Murder trial for the death of Ronald Rider commenced on August 14, 1973, less than ninety (90) days after the crime(s).  Pardue's court appointed attorney, Chandler Stanard, "assisted" him during the trial of the matter, lasting approximately one and one-half hours from opening to verdict.  Pardue was found guilty by the Baldwin County jury and sentenced to life in prison.

35.   Then on October 24, 1973, Stanard represented to Pardue that he must enter a plea of guilty in the Mobile County case (the Hodges murder) because if he did not he would be convicted based on the evidence and would be sentenced to death by electrocution, even though there was no death sentence in the United States at that

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 12

time.  In later proceedings, Stanard's performance was characterized by a Federal Magistrate Judge as "little better than no defense at all."  Among the more egregious errors Stanard committed during the Baldwin County proceedings was allowing the admission of a shotgun as the murder weapon with no evidentiary foundation having been laid.  The owner of the gun and those present during its seizure described it's condition as "cobweb infested and dust-ridden" and stated unequivocally that it had not been fired in some time, quite obviously from its appearance.  Nonetheless, the alleged "murder weapon" was allowed into evidence over no objection and the gun's owner was never called as a witness.  Stanard conducted no investigation, and during trial, offered little in the way of a defense or cross-examination, although the credibility of the investigator was ripe for impeachment, e.g., Nelson Grubbs, State Toxicologist, was not a medical doctor and therefore not qualified to sign the death certificate of Ronald Rider and did not sign it, but no cross-examination was attempted.

36.     Thereafter, Stanard withdrew the appeal filed on Pardue's behalf without his client's permission.  Moreover, Stanard did not even inform Pardue that the appeal had been dismissed.  Many years later, Pardue was allowed an out of time appeal which ultimately resulted in him prevailing on his habeas petition for relief.

E.   **POST CONVICTION PROCEEDINGS.**

37.   Post conviction and Federal habeas proceedings included hearings in 1988, 1989 and 1994.  On at least one occasion, in December, 1994, the United States District Judge Alex Howard of the Southern District of Alabama entered an Order for the Custodians of Records to produce all records relating to Pardue's arrest, interrogation, trial and/or conviction.   The Defendants involved in these events responded that no records existed and that there was no tangible evidence in existence. Sargent Jackson of the Saraland Police Department, Records Custodian, did not produce any records or evidence of any type pursuant to the Federal Court Order, replying that no such records or files or other evidence existed under his supervision, control or to his knowledge and affirmed that he had made a diligent search of the storage facilities under his control and supervision.   On another occasion, a signed plea of guilty was produced which Pardue had never executed.  As is shown with more particularity hereinafter such reply, along with other conduct at this time, constitutes obstruction of justice.

38.   On or about December, 1994, United States District Judge Alex Howard issued an Order requiring that Pardue be afforded another trial within 180 days and in the event such a retrial did not occur, then Pardue would be released from custody.

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 14

After the issuance of this Order, in January and February of 1995, Defendants Harrison, Davis and Lemlier engaged in illegal obstruction of justice activities designed to fabricate illegal evidence for the purpose of falsely prosecuting Pardue for Hodges' murder. The facts constituting this illegal obstruction of justice are alleged with more particularity below.

F.   THE 1995 TRIAL

39.   After receiving the Order from Judge Howard and in preparation for the retrial of Pardue, Defendants Davis, Harrison and Lemlier caused records, documents, photographs and a previously unheard of, illegally hidden and fabricated tape recorded confession allegedly dated May 25, 1973 to appear for use in the retrial. Davis, Harrison and Lemlier suddenly produced inculpatory evidence not seen before and not produced before but failed to locate or procure any exculpatory evidence in violation of Brady v. Maryland. After twenty-two years, Davis, Harrison and Lemlier even produced witnesses who, in 1973, in 1974, in 1988, in 1989 and in December, 1994, did not exist. These witnesses testified at the retrial to facts that existed solely on the fabricated May 25, 1973 taped confession.

40.   The use of fabricated evidence and perjured testimony resulted in another conviction of Pardue for the Hodges' murder. Upon appeal of this

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 15

conviction, the Supreme Court of Alabama reversed the conviction finding that the alleged taped confession was illegal.

G.   CHARGES NOLLE PROSSED

41.   After the Supreme Court of Alabama reversed the 1995 conviction, both Mobile County and Baldwin County nolle prossed the murder charges against Pardue. However, after dismissing these charges, Whetstone and Newcomb appeared in both print and television media making slanderous remarks against Pardue, calling him a killer and comparing him to infamous murderers like Charles Manson, claiming that Pardue prevailed on appeal only on technicalities, not on the merits. Such libelous and slanderous conduct continues to this day. By nolle prosing the murder charges against Pardue, these Defendants have deprived him of his day in court whereby he could prove his innocence, but they have continued to label him as a murderer and dangerous criminal.

GROUNDS FOR LIABILITY

42.   The wrongful acts of all Defendants as alleged throughout the Complaint combined and concurred to cause the damages and harm inflicted upon Pardue; hence, all Defendants are jointly and severally liable to Pardue for damages.

43.   Agents, officers and employees of Mobile County, Baldwin County and

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 16

Cities of Saraland and Chickasaw conspired, planned and acted in concert to deprive

Pardue of his right to be free from malicious prosecution, to be free from

unreasonable search and seizure of the person, to be free from unreasonable and

unwarranted restraints of personal liberty, to be free from deprivation of life and

liberty without due process of law, to be free from self-incrimination, his right to

counsel, and equal protection of the laws under the United States and State of

Alabama Constitutions, respectively, and his substantive due process rights under the

Fourteenth Amendment as a pre-trial detainee.  Included in this conspiracy were

Stanard, attorney for Pardue; Jack Creekmore, Chief Frank Pridgen, Mann and W. C.

Squires of the City of Saraland Police Department; Travis, Estes and Strohe of the

Mobile County Sheriff's Department; W. D. Pierce of the City of Chickasaw Police

Department; A. D. "Cotton" Long and Bobby Stewart of Baldwin County Sheriff's

Department; Holloway and Graddick of the Mobile County District Attorney's office;

Sennett of the Mobile County Forensics Department; and Hendrix of the Baldwin

County District Attorney's office.  In 1995, Defendants Lemlier, Davis and Harrison

conspired, planned and acted in concert to commit such acts and continued the

conspiracy by creating a cover up of the original conspiracy as is alleged with

particularity below.  Likewise, Holloway joined in the 1995 conspiracy and W. C.

Squires of the Saraland Police Department joined in and participated in the 1973 and 1995 conspiracies as alleged below. All were at the Saraland Police Station during the long and unlawful interrogation of Pardue and/or thereafter participated in the conspiracy by suppressing exculpatory evidence, manufacturing incriminating evidence and violating known Constitutional rights, and in the case of Bobby Stewart and William Travis, pressing claims of murder when they knew or should have known any evidence against Pardue was conjured and/or untrue.

44. The officers for the City of Saraland (Pridgen, Mann, Creekmore and Squires) participated in and wantonly allowed officers from other jurisdictions to interrogate, intimidate, beat and frame Pardue. As a result, Pardue suffered a deprivation of his constitutional rights to be free from unreasonable search and seizure, due process of law and equal protection of the laws guaranteed under the laws and Constitutions for the United States and the State of Alabama, as identified with particularity below. Pardue further was deprived of the right to an attorney in violation of his Constitutional rights.

45. All individual Defendants, except Stanard, acted under color of State law and authority and did lend support to, conspire, plan and further the acts of the conspiracy, without probable cause, to threaten and intimidate Pardue into making a

confession, in obstructing justice, depriving Pardue of his constitutional rights to be free from searches and seizure without probable cause, to equal protection of the laws and due process. Stanard joined with and furthered the goals of the conspiracy in pretending to represent the interests of Pardue, but in fact, cooperated with the efforts of the conspirators.

46.    Graddick was an Assistant District Attorney for Mobile County in 1973 who ignored exculpatory and alibi evidence when he threatened Pardue with receiving punishment in the form of the electric chair if he refused to plead guilty to the Mobile County murders. In fact, there was no death by electrocution or any death penalty in Alabama or in the United States at that time. Graddick entered into, furthered and participated in the conspiracy when he knew or should have known that William Travis, who had a notorious history of beating and intimidating parties to make confessions in violation of their Constitutional rights, obtained an alleged confession. Graddick never questioned the phony evidence and, in truth, he actively joined Travis, Pridgen, Mann, Grubbs and Holloway in presenting false evidence and in the obstruction of justice. On the day of Pardue's scheduled trial for the murders of Hodges and White, October 24, 1973, in the presence of Stanard and Holloway, Graddick threatened Pardue with the non-existent death penalty, knowing Holloway

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 19

and Stanard would say nothing to refute him, and they said nothing, thus, forcing Pardue to plead guilty to crimes he did not commit. Graddick did these acts with full knowledge that Al Smith had filed a delinquency report in September, 1973, in which Pardue told Smith he did not commit the murders. In 1997, Graddick, who had distinguished himself in State politics and thereby obtained a reasonable amount of credibility, slandered Pardue by publishing to the media a statement that Pardue was "a killer who enjoyed it", inferring that Pardue is a psychotic murderer.

47.     Baldwin County District Attorney Hendrix, in 1973, obstructed justice by prosecuting Pardue for the Rider murder and in the course of said prosecution Hendrix concealed exculpatory evidence, allowed witnesses to give perjured testimony and conspired with Defendant Long, Defendant Mann, Bobby Stewart, William Travis, Frank Pridgen, Nelson Grubbs and Teresa Lanier, along with diverse others, to convict Pardue of the Rider murder, without Stanard providing any defense whatsoever for Pardue in this Capital Murder trial.

48.     After Pardue's arrest in 1973, his grandmother asked Stanard to go to the Saraland Police Station for the purpose of representing Pardue. When Stanard arrived at the Saraland Police Station, he was met with hostile attitudes and was refused permission to see Pardue. Stanard accepted this refusal, left and made no effort to

stop the police interrogation or to stop them from denying Pardue access to an attorney. Stanard did not go to any judicial official or law enforcement official to lodge a complaint for Pardue being denied access to an attorney. Several days later at the preliminary hearing in Saraland, Stanard ignored Pardue's physical state, revealing bruises, swelling and near complete exhaustion as if such condition was the normal result of an acceptable police interrogation. Stanard never asked Pardue for his version of the events or even asked Pardue how he felt physically. Stanard waived the hearing and left.

49.     Between May 27, 1973 and August 14, 1973 (the Rider trial date), Stanard made no attempts to investigate any defense. He interviewed no one. Stanard made no pre-trial discovery motions, and never sought to have any co-defendant statements produced. When Pardue told Stanard that he was innocent prior to the Rider trial in August, 1973, Stanard laughed and told Pardue that it did not matter at that point because Pardue had confessed and there was nothing he could do to help Pardue at that point. At trial, Stanard did not seek to know where the police had obtained the alleged murder weapon, and did not call J. B. Duncan or the shotgun's owner as witnesses. Stanard did not question Nelson Grubbs' testimony as to the cause of Rider's death even though Grubbs' testimony was incorrect and

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 21

Grubbs had no record or documented proof to support his testimony and, in fact, had not performed the autopsy.  Stanard further allowed Bobby Stewart to testify that Pardue had made a verbal confession and never asked that Stewart produce a signed confession.  Stanard never questioned Bobby Stewart or William Travis if they had tape recorded any confession. In less than two (2) hours, Pardue was convicted of Capital Murder, sentenced to life in prison, all without Hendrix having to produce a single photograph or report from the Mobile City Police, the State Troopers, or the medical doctor who issued Rider's death certificate and without even requiring Hendrix to produce Rider's death certificate.

50.    In September, 1973, Stanard had knowledge of Al Smith's delinquency report in which Pardue had stated he did not kill Hodges and never even reviewed a psychological evaluation in which Pardue again stated that he was innocent.  Stanard instead stood silent while Graddick and Holloway told Pardue he would get the death penalty if he did not plead guilty on October 24, 1973.  Again, in the Mobile County case, Stanard made no discovery motions, did not request any co-defendant statements, never bothered to review any of Grubbs' false reports or to investigate these reports at all and never reviewed White's death certificate (signed by Grubbs) showing no cause of death.  Later, after Pardue entered a plea of guilty to the Hodges'

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 22

murder, Stanard applied for payment of his Court appointed fees on the way out of the courthouse and then withdrew the appeal to the Rider murder without even having permission of Pardue and without even informing him that the appeal had been withdrawn.

51.    Stanard's actions were willful and his actions provided knowing assistance to falsely convict Pardue of the Rider, Hodges and White murders. Stanard continues to this day to defend Hendrix, Travis and the other persons who committed these wrongs against Pardue. Stanard has even made a slanderous statement in public that Pardue told him he was guilty in an effort to justify his total lack of effort to defend Pardue in 1973 and 1974.

52.    Frank Mann, an officer with the City of Saraland, acted wantonly in conspiring with William Travis (a known abuser and beater of suspects) to interrogate, intimidate and hit Pardue in Saraland in May, 1973. Frank Pridgen, deceased, was the Chief of Police in Saraland in May, 1973 and he participated in the conspiracy, beatings, and threatening acts that were in furtherance of the conspiracy and that themselves violated Pardue's constitutional rights and caused him bodily harm. Jack Creekmore and W. C. Squires were also police officers involved in the illegal interrogation and/or investigation described herein.

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 23

53.     Mann participated in the first search of John Brown's car, and then in the second search when evidence was planted that was used to show Pardue's guilt. Mann took photographs of the Hodges' murder scene which showed Hodges had been shot only once, but assisted Travis and Pridgen in forcing Pardue to say that he had shot Hodges twice, which was corroborated by Grubbs.  Among other things, Mann participated in Travis' efforts to force Pardue to tell him about every gun Pardue had ever seen and who had it until, after several hours, Pardue told him that J. B. Duncan had a shot gun owned by a friend.  Mann then accompanied Travis, Pridgen and Creekmore to J. B. Duncan's home, saw the gun covered with dust and spider webs, knowing it would be impossible to have used the gun three (3) days earlier to murder Rider and Hodges.  Mann heard Travis tell J. B. Duncan that the gun was not what they were looking for, but he had to confiscate it due to its illegal sixteen inch barrel. Mann then participated with Travis in cleaning, oiling and then firing J. B. Duncan's gun; using red rags to wipe it and then planting these rags in John Brown's car to find them on a later search of John Brown's car after original searches had produced no evidence.

54.     Creekmore participated in the conspiracy by his presence during the seventy-eight (78) hours of the illegal interrogations, beatings, all without food, water

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 24

or bathroom access, until Pardue begged for them. Creekmore participated in the first such search of John Brown's car, finding no evidence. Creekmore had knowledge that on the second or third search days red rags were found which allegedly had been used to clean and oil the J. B. Duncan shotgun. Creekmore made no effort to reveal that this evidence was planted. Creekmore witnessed Travis' threats, promises and physical violence to Pardue, forcing Pardue to repeat Travis' long version of the story, over and over. Creekmore witnessed many fruitless searches for the alleged murder weapon, yet did nothing to stop this illegal activity and later went with Travis, Pridgen and Mann to J. B. Duncan's home and saw the dusty, spider web covered gun. Creekmore aided Travis by his silence when Travis cleaned, fired, oiled and then planted the cleaning rags in John Brown's car.

55.    Holloway actively aided in obstruction of justice by participating in the weapons search with Mann, Creekmore and others on May 22 or 23, 1973 and then in 1995 committed perjury in the Hodges' retrial. Holloway made no effort to stop the illegal interrogation of Pardue. He was present on May 24-25, 1973 when the illegal and unconstitutional confession was allegedly tape recorded and knew that the interrogation was not accurately shown on the altered version produced by Lemlier and Davis in March, 1995 at the Hodges' retrial. Holloway perjured himself at the

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 25

1995 retrial when he testified that the tape recording was accurate. A forensics expert later analyzed the tape and found numerous unexplained starts and stops which Holloway testified had never occurred.

56.    Holloway knew that any gun which could have been used in the murders had not been found; he knew that Pardue had stolen a Volkswagen at or about the time the Baldwin County murder was committed; he knew that Pardue did not have any money on him and none was found in his room at his grandmother's house; he knew that one victim was actually murdered with a crowbar and a gun; he knew or should have known that Travis had threatened and beaten both Pardue and John Brown and had threatened and intimidated Teresa Lanier to obtain confessions; and he knew or should have known that Pardue did not commit the murders for which he was charged. Holloway also knew or should have known that Lanier first identified John Brown as the killer of Ronald Rider.

57.    Nevertheless, Holloway unlawfully used his position and pursued indictments against Pardue with false testimony and conjured evidence and thereafter threatened Pardue with the electric chair if he did not plead guilty to the Hodges' murder. Holloway was not performing a judicial function when he took part in the investigation, advised police and sat in on the taped "confession" of Pardue and was

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 26

not in a courtroom or judge's chambers when threatened Pardue with death by electrocution if he did not plead guilty, despite the existence of exculpatory and alibi evidence.

58.     Sennett was employed as an assistant to Nelson Grubbs and was employed by Mobile County as Forensics Specialist, a criminalist, and aided and abetted the conspiracy by failing to fully report on the evidence and otherwise mischaracterizing and suppressing evidence in a successful effort to obstruct justice. Sennett was present at the first and second search of John Brown's car, witnessing the discovery of the first red rag. Sennett was privy to Grubbs' reports on the Hodges and White murders, with his name appearing on several of those official documents. Sennett never revealed that Grubbs was preparing official reports to support Travis' needs, ignoring the physical evidence. As a criminalist, Sennett knew or should have known that every document Grubbs produced contained false information regarding the confirmation that the Duncan gun fired the fatal shots which killed Rider and Hodges.  Sennett never protested this illegal conduct.  Moreover, his silence constitutes tacit approval or agreement to participate in obstruction of justice efforts.

59.     Davis and Harrison were the Assistant District Attorneys who prosecuted Pardue in 1995, after the original convictions were overturned. Davis and Harrison

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 27

continued the conspiracy and created a cover up of the original conspiracy by procuring and promoting false and perjured testimony prior to the trial and outside their judicial function as prosecutors.

60.    Davis was fully aware that his office had responded to Judge Howard's order to produce any and all records, documents, notes and any other evidence in its possession concerning the murders of Hodges and White by informing the Court that no such evidence existed.  After receiving Judge Howard's Order to release Pardue or give him a new trial, Davis, Harrison and Lemlier caused records, documents, photographs and the previously unheard of, illegally hidden May 25, 1973 reported tape recorded confession by Pardue to appear.  Moreover, as alleged herein, Davis and Harrison allowed witnesses to provide perjured testimony.

61.    Lemlier was an investigator for the Mobile County Sheriff's Department in 1995 who procured and promoted false testimony concerning Pardue's role in the murders.  Lemlier had no evidence of Pardue's involvement, but knowingly used inaccurate reports, records and misconstrued evidence so that a prosecution would be had against Pardue.  Lemlier's acts were in furtherance of the original conspiracy and were to cover up the original conspiracy to violate the constitutional rights of Pardue as heretofore enumerated.  Among other things Lemlier's acts included fabrication

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 28

of evidence and the procuring of perjured testimony.

62.     A. D. "Cotton" Long was the first Baldwin County law enforcement official to arrive at the Rider murder scene on May 22, 1973. Long aided Hendrix, Travis and others in 1973 by assisting them in concealing all reports produced by the Mobile City Police and State Troopers who were at the Rider murder scene when Long arrived. Long participated in the conspiracy to obstruct justice by withholding the information that the crowbar found next to Rider's body belonged to the deceased. Long, having full knowledge that exculpatory evidence existed and having sufficient evidence before him that Pardue could not have committed the Rider murder, obstructed justice by aiding and abetting others who produced false records and perjured testimony and by standing silent when he knew justice was being obstructed in such a manner.

63.     Pierce, having never testified at any 1973 or 1974 trial, or succeeding 1988, 1989 or 1994 hearings, actively aided and assisted Davis and Harrison and others in obstructing justice by providing false testimony, knowing it was illegal to do so, at the 1995 retrial of the Hodges' murder. Pierce falsely testified that at 7:30 a.m. on May 22, 1973, Pardue telephoned him at his home and told him that Pardue "was in trouble, and what should I do." Pierce was an undercover police officer in

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 29

May, 1973. Pierce provided perjured testimony solely in the 1995 retrial in an effort to prove that the purported taped confession was not coerced. Harrison and Davis knew the Pierce's testimony was false from the volumes of records presented at both 1973 and 1974 trials, and the post-conviction and Federal habeas hearings from 1988, 1989 and 1994 wherein it is clearly established that Pardue had no access to a telephone during the time at issue. The only telephone call made up until Noon, May 22, 1973, was when Pardue telephoned the Saraland police station to report his car had been stolen. Hence, Pierce's conduct constitutes obstruction of justice and aiding and abetting in the obstruction of justice to deprive Pardue of his constitutional rights enumerated herein.

64.     Sargent Jackson of the Saraland Police Department actively assisted in obstruction of justice by aiding Harrison, Davis and Lemlier in producing illegal evidence and concealing evidence in a Federal habeas proceeding in disobedience of the discovery order issued by Judge Howard. Sgt. Jackson did not produce a single record or evidence pursuant to the Federal Court Order and affirmatively stated that no records, files or other evidence existed under his supervision, control or to his knowledge and had found none after a diligent search of the storage facilities under his control and supervision as custodian of the records for the Saraland Police

Department.

65.     After Judge Howard issued his Order in December, 1994 requiring the release of Pardue or a retrial within 180 days, Lemlier enlisted Sgt. Jackson's assistance to procure the very records Sgt. Jackson had told Judge Howard did not exist. Jackson cooperated, knowing it was illegal to do so, in producing fabricated records. Lemlier "found" the Hodges' murder scene photographs and the purported May 25, 1973 confession tape. Sgt. Jackson continued to aid Harrison, Davis and Lemlier in obstructing justice by not reporting their illegal activities, knowing those actions were illegal. Jackson allowed Lemlier and Davis unrecorded access, without supervision, into the record storage facility and then stood silent while Lemlier claimed the photographs and tape were in Jackson's storage facility all along. Additionally, Sgt. Jackson was not called as a witness in the 1995 retrial to provide chain of custody testimony and thereafter continued to aid and further the obstruction of justice activities by not reporting this illegal conduct.

66.     W. C. Squires of the Saraland Police Department participated in the illegal interrogation of Pardue in May, 1973 and thereafter actively and directly obstructed justice in 1995 by providing false testimony, ordering false documents and by remaining silent as to his knowledge of illegal activity. Squires was present

during the illegal interrogation of Pardue in 1973 and then, in 1995, after twenty-two years of silence, Squires produced a report which he claimed to have prepared in May, 1973. This report alleges that Pardue came to the Saraland Police Department twice on May 22, 1973 which is a false statement and Squires testified under oath that it was true statement. This document and testimony was used to convict Pardue illegally in 1995.

67. Whetstone has made libelous and slanderous statements about Pardue to the media which are highly prejudicial to Pardue's character. Whetstone uttered these statements even after Baldwin County dropped all charges against Pardue. Among other things, in February, 1998, on the "Leeza Show" in a national broadcast, Whetstone stated that Pardue is a "Ted Bundy" and "Charles Manson" type person. Whetstone publicly stated that he could give Pardue a new trial as Pardue had requested, however, months later Whetstone dismissed the Rider murder charge. Even after such dismissal, Whetstone continued to libel and slander Pardue by continuing to call him a triple killer on "Dateline NBC" and others. Hence, even though all charges have been dismissed, Pardue remains "branded a killer" and as a result of the charges being nolle prossed, Pardue cannot prove his innocence to these charges except through this civil litigation. Additionally, Whetstone knowingly

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 32

violated Ala.Code § 15-22-53 by uttering a confidential probation report to a French news magazine without having any legal authority to obtain such document. Pardue avers that such release merely aids and abets in the obstruction of justice which has ruined his life.

68.     Newcomb likewise has published libelous and slanderous statements about Pardue. Newcomb appeared on the Fox Network "Catherine Crier Show" at which time she accused Pardue of being a murderer who had used technicalities, rather than truth, in successfully having his murder convictions nolle prossed. Such statement is not supported by any evidence and was willingly rendered to assist Whetstone after he was criticized for his appearance on the "Leeza Show", thus making Pardue's innocence more difficult to prove as a result of such obstruction of justice.

69.     In May, 1973, Sam McLarty was the fingerprint expert for the Mobile County Sheriff's Department. On May 22, 1973 McLarty obtained fingerprints from the stolen 1963 red Volkswagen, found in a wooded area some 200 feet from Pardue's car and John Brown's motel room at The Plantation Inn Motel. McLarty has knowledge that Pardue's fingerprints were on the hood and passenger side of the vehicle and that Teresa Lanier's fingerprints were on the steering wheel, gear shift

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 33

and driver's side of the car. Such evidence would establish that Pardue could not have killed Rider inasmuch as he was miles away from the murder scene at the time Ronald Rider was killed. This evidence also proves that Teresa Lanier committed perjury after making a deal to testify for the State during the Rider murder trial. McLarty, in his silence and refusal to come forward with this evidence, has aided and abetted in both the 1973 and 1975 obstruction of justice efforts inasmuch as withholding this exculpatory evidence has assisted in depriving Pardue of his constitutional rights.

70.     Parole and Probation Officer Cobb, in February of 1995, conducted a court ordered Youthful Offender investigation of Pardue after Judge Howard entered his Order requiring a new trial on the Hodges' murder. In his investigative report, Cobb utilized only inculpatory portions of Al Smith's September, 1973 report. Later in a Federal habeas hearing held December 18, 1998 before Magistrate Judge Carroll for the Middle District of Alabama, it was revealed that Cobb's February, 1995 report to Mobile Circuit Judge Galanos, word for word, including punctuation, is identical to the inculpatory portions of Al Smith's 1973 report. None of the exculpatory facts are included in the report. Cobb, a career parole/probation officer, is well aware that his exclusion of exculpatory evidence, in Smith's 1973 report, was illegal and

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 34

constitutes an obstruction of justice. The exculpatory portion of Smith's report is a statement by Pardue claiming that he is innocent of Hodges' murder. Moreover, Cobb's possession of Smith's exculpatory report in February, 1995 firmly establishes that Pardue's discovery motion for Brady materials filed in March, 1995 was illegally ignored by the Mobile prosecutors.

## COUNT ONE
### (§ 1983 Violations)

71.    Pardue adopts and incorporates by reference herein the allegations contained in Paragraphs 1 through 70.

72.    The aforementioned acts or omissions to act of the Defendants Mann, Long, Holloway, Harrison, Sennett, Davis, Lemlier and Hendrix constitutes deliberate and callous indifference to Pardue's constitutional rights protected and guaranteed under the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States and further constitutes obstruction of justice intended to deprive Pardue of his rights guaranteed under the Constitution and laws of the United States and the State of Alabama in violation of 42 U.S.C. § 1983.

73.    Specifically, these Defendants violated 42 U.S.C. § 1983 as follows:

(A)    Defendant Mann was a person acting under color of State law through his employment with the City of Saraland, subjected Pardue or caused Pardue

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 35

to be subjected to the deprivation of the following rights secured by the U. S. Constitution:  the Fourth Amendment rights to be free from malicious prosecution, to be free of unreasonable seizure of the person and to be free of unreasonable or unwarranted restraints of personal liberty; the Fifth Amendment rights against deprivation of life and liberty without due process of law, against self-incrimination, right to counsel, right to exculpatory evidence as set out in <u>Brady v. Maryland</u>; the Eighth Amendment right to be free from cruel and unusual punishment and in violation of the Fourteenth Amendment due process of law as a pretrial detainee. Defendant Mann deprived Pardue of the above described constitutional rights as described more fully in Paragraphs 32, 43, 44, 52 and 53.

(B)   Defendant Long was a person acting under color of State law, through his employment with the Baldwin County Sheriff's Department, subjected Pardue or caused Pardue to be subjected to the deprivation of the following rights secured by the U. S. Constitution:  the Fourth Amendment rights to be free from malicious prosecution, to be free of unreasonable seizure of the person and to be free of unreasonable or unwarranted restraints of personal liberty; the Fifth Amendment rights against deprivation of life and liberty without due process of law, against self-incrimination, right to counsel, right to exculpatory evidence as set out in <u>Brady v.</u>

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 36

Maryland; the Eighth Amendment right to be free from cruel and unusual punishment and in violation of the Fourteenth Amendment due process of law as a pretrial detainee.  Defendant Long deprived Pardue of the above described constitutional rights as described more fully in Paragraphs 43 and 62.

(C)   Defendant Holloway was a person acting under color of State law, through his employment with the Mobile County District Attorney's office, subjected Pardue or caused Pardue to be subjected to the deprivation of the following rights secured by the U. S. Constitution:  the Fourth Amendment rights to be free from malicious prosecution, to be free of unreasonable seizure of the person and to be free of unreasonable or unwarranted restraints of personal liberty; the Fifth Amendment rights against deprivation of life and liberty without due process of law, against self-incrimination, right to counsel, right to exculpatory evidence as set out in Brady v. Maryland; the Eighth Amendment right to be free from cruel and unusual punishment and in violation of the Fourteenth Amendment due process of law as a pretrial detainee. Defendant Holloway deprived Pardue of the above described constitutional rights as described more fully in Paragraphs 32, 43, 55, 56 and 57.

(D)   Defendant Harrison was a person acting under color of State law, through his employment with the Mobile County District Attorney's office, subjected

Pardue or caused Pardue to be subjected to the deprivation of the following rights secured by the U. S. Constitution:  the Fourth Amendment rights to be free from malicious prosecution, to be free of unreasonable seizure of the person and to be free of unreasonable or unwarranted restraints of personal liberty; the Fifth Amendment rights against deprivation of life and liberty without due process of law, against self-incrimination, right to exculpatory evidence as set out in <u>Brady v. Maryland</u>; the Eighth Amendment right to be free from cruel and unusual punishment. Defendant Harrison deprived Pardue of the above described constitutional rights as described more fully in Paragraphs 39, 43, 59 and 60.

(E)     Defendant Sennett was a person acting under color of State law, through his employment as an Assistant Forensics Specialist/Criminalist, subjected Pardue or caused Pardue to be subjected to the deprivation of the following rights secured by the U. S. Constitution:  the Fourth Amendment rights to be free from malicious prosecution, to be free of unreasonable seizure of the person and to be free of unreasonable or unwarranted restraints of personal liberty; the Fifth Amendment rights against deprivation of life and liberty without due process of law, against self-incrimination, right to counsel, right to exculpatory evidence as set out in <u>Brady v. Maryland</u>; the Eighth Amendment right to be free from cruel and unusual punishment

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 38

and in violation of the Fourteenth Amendment due process of law as a pretrial detainee.  Defendant Sennett deprived Pardue of the above described constitutional rights as described more fully in Paragraphs 43 and 58.

(F)     Defendant Davis was a person acting under color of State law, through his employment with the Mobile County District Attorney's office, subjected Pardue or caused Pardue to be subjected to the deprivation of the following rights secured by the U. S. Constitution:  the Fourth Amendment rights to be free from malicious prosecution, to be free of unreasonable seizure of the person and to be free of unreasonable or unwarranted restraints of personal liberty; the Fifth Amendment rights against deprivation of life and liberty without due process of law, against self-incrimination, right to exculpatory evidence as set out in <u>Brady v. Maryland</u>; the Eighth Amendment right to be free from cruel and unusual punishment. Defendant Davis deprived Pardue of the above described constitutional rights as described more fully in Paragraphs 39, 43, 59 and 60.

(G)     Defendant Lemlier was a person acting under color of State law, through his employment with the Mobile County Sheriff's Department, subjected Pardue or caused Pardue to be subjected to the deprivation of the following rights secured by the U. S. Constitution:  the Fourth Amendment rights to be free from

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 39

malicious prosecution, to be free of unreasonable seizure of the person and to be free of unreasonable or unwarranted restraints of personal liberty; the Fifth Amendment rights against deprivation of life and liberty without due process of law, against self-incrimination, right to exculpatory evidence as set out in <u>Brady v. Maryland</u>; the Eighth Amendment right to be free from cruel and unusual punishment. Defendant Lemlier deprived Pardue of the above described constitutional rights as described more fully in Paragraphs 39, 43, 60, 61 and 65.

(H)     Defendant Hendrix was a person acting under color of State law, through his employment as the District Attorney of Baldwin, subjected Pardue or caused Pardue to be subjected to the deprivation of the following rights secured by the U. S. Constitution:  the Fourth Amendment rights to be free from malicious prosecution, to be free of unreasonable seizure of the person and to be free of unreasonable or unwarranted restraints of personal liberty; the Fifth Amendment rights against deprivation of life and liberty without due process of law, against self-incrimination, right to counsel, right to exculpatory evidence as set out in <u>Brady v. Maryland</u>; the Eighth Amendment right to be free from cruel and unusual punishment and in violation of the Fourteenth Amendment due process of law as a pretrial detainee.  Defendant Hendrix deprived Pardue of the above described constitutional

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 40

rights as described more fully in Paragraphs 43, and 47.

74.     As a direct and proximate result of these unlawful and constitutionally reprehensible acts, Pardue was caused humiliation, marked as a murderer, suffered a loss of freedom of movement, deprived of the right to work for himself and to earn income, to have a family and pursue the joys, liberties and responsibilities of citizenship in the State of Alabama and the United Sates, for which the Defendants Mann, Long, Holloway, Harrison, Sennett, Davis, Lemlier and Hendrix are jointly and severally liable for damages.

COUNT TWO
(§ 1983 Conspiracy)

75.     Pardue adopts and incorporates by reference herein the allegations contained in Paragraphs 1 through 74.

76.     Pardue avers that, in 1973, Defendants Mann, Long, Holloway, Graddick, Sennett, Stanard, Lemlier and Hendrix, acted individually and in concert to deprive him of rights secured by the Constitution and laws of the United States and of the State of Alabama and specifically deprived him of his liberty and freedom in violation of 42 U.S.C. § 1983 as alleged hereinabove. In 1995, Defendants Holloway, Davis and Harrison acted individually and in concert to deprive him of rights secured by the Constitution and laws of the United States and the State of Alabama and

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 41

specifically deprived him of his liberty and freedom in violation of 42 U.S.C. § 1983 as alleged hereinabove.   These Defendants joined, planned and acted upon a conspiracy to violate his Constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.   The individual law enforcement Defendants, acting for and on behalf of the respective governmental entities, without probable cause, exceeded the scope of their authority in intimidating, beating, threatening and depriving Pardue of food, water and sleep for a period of over seventy-eight (78) hours for the purpose of obtaining a "confession" of murder; and, all of the individual Defendants identified in this Count joined and condoned these acts and furthered the purpose of the conspiracy in conjuring and misconstruing evidence, making false allegations and assertions to others, suppressing evidence, and/or failing to provide exculpatory evidence in order to convict and imprison Pardue. Moreover, Stanard joined in, aided and abetted this conspiracy by failing and refusing to provide any semblance of a defense, or any reasonable counsel in the face of clearly inconsistent and irrelevant evidence of Pardue's guilt.   Further, Stanard dismissed or withdrew Pardue's appeal without agreement, consent or authority of Pardue.

   (A)  Defendants Mann, Long, Holloway, Graddick, Harrison, Sennett,

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 42

Davis, Lemlier and Hendrix are persons under § 1983, acting under color of State law, subjected Pardue or caused Pardue to be subjected to the deprivation of the following rights under the U. S. Constitution through a conspiracy:  the Fourth Amendment rights to be free from malicious prosecution, to be free of unreasonable seizure of the person and to be free of unreasonable or unwarranted restraints of personal liberty; the Fifth Amendment rights against deprivation of life and liberty without due process of law, against self-incrimination, right to counsel, right to exculpatory evidence as set out in <u>Brady v. Maryland</u>; the Eighth Amendment right to be free from cruel and unusual punishment and in violation of the Fourteenth Amendment due process of law as a pretrial detainee.  Defendant Stanard joined with and furthered the goals of conspiracy in pretending to represent the interests of Pardue, but in fact, cooperated with the efforts of the conspirators.

77.    As a direct and proximate result of these unlawful and wrongful acts, Pardue suffered those damages alleged hereinabove.

<u>COUNT THREE</u>
(Policy or Custom Liability)

78.    Pardue adopts and incorporates by reference herein the allegations contained in paragraphs 1 through 77.

79.    The City of Saraland, a person under § 1983, acting under color of State

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 43

law, subjected or caused Pardue to be subjected to the deprivation of the following rights secured by the U. S. Constitution: the Fourth Amendment rights to be free from malicious prosecution, to be free of unreasonable seizure of the person and to be free of unreasonable or unwarranted restraints of personal liberty; the Fifth Amendment rights against deprivation of life and liberty without due process of law, against self-incrimination, right to counsel, right to exculpatory evidence as set out in <u>Brady v. Maryland</u>; the Eighth Amendment right to be free from cruel and unusual punishment and in violation of the Fourteenth Amendment due process of law as a pretrial detainee.

80.     City of Saraland, through its Chief of Police Frank Pridgen, officially sanctioned the above described unconstitutional acts that occurred at the Saraland Police Station (interrogation) and the manufacturing of evidence and suppression of evidence (the shotgun and subsequent discovered evidence in John Brown's vehicle). Pardue avers that the City of Saraland failed to implement and/or provide for any safeguard or failed to follow one already in place against such unconstitutional conduct and further failed, by policy, to properly follow correct police procedure relating to or regarding the interrogation of suspects and suppression and/or manufacturing of evidence. Chief of Police Frank Pridgen, who is the final policy

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 44

making authority on police activities for the City of Saraland, was present and ratified his police officers' conduct, the acts and behavior surrounding the unconstitutional and illegal interrogation, and the manufacturing and/or suppression of evidence. Where action is directed by the person who establishes city policy, the municipality is responsible whether that action is to be taken only once or to be taken repeatedly.

81.     Mobile County and Baldwin County are persons under § 1983 acting under the color of state law. Mobile County and Baldwin County subjected or caused Pardue to be subjected to the deprivation of the following rights secured by the U.S. Constitution: the Fourth Amendment rights to be free from malicious prosecution, to be free of unreasonable seizure of the person and to be free of unreasonable or unwarranted restraints of personal liberty; the Fifth Amendment rights against deprivation of life and liberty without due process of law, against self-incrimination, right to counsel, right to exculpatory evidence as set out in Brady v. Maryland; the Eighth Amendment right to be free from cruel and unusual punishment and in violation of the Fourteenth Amendment due process of law as a pretrial detainee.

82.     Mobile County, through the Mobile County Personnel Board, has the final say prior to judicial review, over how and to what degree a county employee may be disciplined, suspended, demoted or terminated. The Baldwin County

Commission has the final say, prior to judicial review, over how and to what degree a county employee may be disciplined, suspended, demoted or terminated. Pardue's deprivation of rights and damages as described herein is the result of a policy or custom attributable to William Travis (Mobile County Chief Deputy at the subject time) and Bobby Stewart (Baldwin County Chief Deputy at the subject time) Both these Chief Deputies were known to brutally beat confessions out of people whom they interrogated and to illegally handle evidence against or in favor of such persons, and had a history of such behavior. Mobile County, through the Mobile County Personnel Board failed to exercise its duty to investigate and discipline its classified service employees. Baldwin County, through the Baldwin County Commission, failed to exercise its duty to investigate and discipline its merit system employees. These duties were delegated by the State. The lack of action by the Mobile County Personnel Board and the Baldwin County Commission created a "custom or usage" for the type of unconstitutional behavior described in detail herein. The failure of the Mobile County Personnel Board and the Baldwin County Commission to act on their duly delegated authority to investigate and discipline employees, allowed or officially sanctioned the known unconstitutional conduct of William Travis and Bobby Stewart.

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 46

## COUNT FOUR
(Malicious Prosecution)

83.    Pardue adopts and incorporates by reference herein the allegations contained in Paragraphs 1 through 82.

84.    The Defendants Mann, Long, Holloway, Graddick, Harrison, Sennett, Davis, Lemlier and Hendrix maliciously and without probable cause therefor, caused Pardue to be arrested, interrogated, indicted, prosecuted and convicted of the murder charges described herein.  These Defendants either instituted and/or participated in a conspiracy to institute criminal proceedings against Pardue, or at the instance of Travis, Mann, Grubbs, Sennett, Holloway, Graddick, Davis, Harrison and Stewart, criminal proceedings were instituted and ultimately terminated in Pardue's favor, by all charges being nolle prossed and Pardue discharged.

85.    As a direct and proximate result of the actions of these Defendants, Pardue was injured in that he was prosecuted for murder, coerced to plead guilty to murder, imprisoned for more than twenty-five (25) years, deprived of his freedom of movement, suffered a loss of enjoyment of life, mental anguish, emotional distress, deprivation of the enjoyment of children and family, humiliation of being marked a murderer and a loss of career opportunities.

## COUNT FIVE
### (Outrage)

86.    Pardue adopts and incorporates by reference herein the allegations contained in Paragraphs 1 through 85.

87.    The Defendants' Mann, Long, Holloway, Graddick, Harrison, Sennett, Davis, Lemlier, Hendrix and Stanard treatment of Pardue as described herein is utterly intolerable in a decent, civilized society.  Such conduct is outrageous in character inasmuch as civilization is only allowed to thrive where fair and even justice is the norm, not the exception; and is continuing in nature.  As a result of such outrageous conduct, Pardue has suffered those damages described herein.

## COUNT SIX
### (Wantonness)

88.    Pardue adopts and incorporates by reference herein the allegations contained in Paragraphs 1 through 87.

89.    The Defendants Mann, Long, Holloway, Graddick, Harrison, Sennett, Davis, Lemlier, Hendrix and Stanard acted in a wanton manner and with a reckless disregard for the rights of Pardue by doing those acts described herein or omitting to perform a known duty to Pardue as alleged herein.  As a result of said wanton and reckless conduct, Pardue suffered damages, including mental anguish.

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 48

## COUNT SEVEN
(Libel and Slander)

90.     Pardue adopts and incorporates by reference herein the allegations contained in Paragraphs 1 through 89.

91.     Defendants Graddick, Whetstone and Newcomb libeled and slandered Pardue by making those statements described hereinabove when they knew or should have known there was no evidence against Pardue for any such infamous crimes. These statements were published to members of the media, both print and television, who published them to millions of people and thereby maligned Pardue's character, causing him humiliation, frustration and mental anguish inasmuch as these Defendants continued to label Pardue as a serial murderer, even though all charges have been dismissed against him for lack of evidence.  As a direct and proximate result of this liable and slander, Pardue has suffered those damages described herein, including mental anguish.

## COUNT EIGHT
(State Law Conspiracy-Malicious Prosecution)

92.     Pardue adopts and incorporates by reference herein the allegations contained in Paragraphs 1 through 91.

93.     The Defendants Mann, Long, Holloway, Graddick, Harrison, Sennett,

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 49

Davis, Lemlier, and Hendrix conspired, combined, confederated and agreed among themselves and with diverse others to maliciously and without probable cause therefor, caused Pardue to be arrested, interrogated, indicted, prosecuted and convicted of the murder charges described herein. These Defendants either instituted and/or participated in a conspiracy to institute criminal proceedings against Pardue, or at the instance of Travis, Mann, Grubbs, Sennett, Holloway, Graddick, Davis, Harrison and Stewart, criminal proceedings were instituted and ultimately terminated in Pardue's favor, by all charges being nolle prossed and Pardue discharged. Said conspiracy was conducted with the intent to injure and harm Pardue.

94. As a direct and proximate result of the actions of these Defendants, Pardue was injured in that he was prosecuted for murder, coerced to plea guilty to murder, imprisoned for more than twenty-five (25) years, deprived of his freedom of movement, suffered a loss of enjoyment of life, mental anguish, emotional distress, deprivation of the enjoyment of children and family, humiliation of being marked a murderer and a loss of career opportunities.

PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Michael Pardue, demands judgment against all of the named Defendants, jointly and severally, as follows:

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 50

(A)    For an award of damages, both compensatory and punitive, on all federal claims in an amount to be determined by a jury;

(B)    For an award of damages, both compensatory and punitive, as to all State claims in an amount to be determined by a jury;

(C)    For an award of reasonable attorney's fees and costs incurred in this action pursuant to 42 U.S.C. § 1988 and under the Civil Rights Attorneys Fees Award Act of 1976; and

(D)    For such other and further relief as the Court deems just and proper.

_____
JAMES G. CURENTON, JR.    CUREJ4336
Attorney for Plaintiff
Post Office Box 1435
Fairhope, AL 36533
334-928-3993

## CERTIFICATE OF SERVICE

I hereby certify that I have on the 4th day of November, 1999, served a copy of the foregoing pleading on all parties or their counsel by hand delivery, by facsimile transmittal, or by mailing United States Postal Service, first class postage prepaid and addressed as set out below.

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 51

Honorable Scott L. Rouse
Attorney at Law
Office of the Attorney General
Civil Litigation Section
11 South Union Street
Montgomery, AL 36130-0152

Honorable M. Kathryn Knight
Attorney at Law
P. O. Drawer 2568
Mobile, AL 36652

Honorable Lawrence M. Wettermark
Attorney at Law
P. O. Box 16629
Mobile, AL 36616-0629

Honorable Michael E. Mark
Attorney at Law
P. O. Box 2664
Mobile, AL 36652

Honorable Tracey P. Turner
Attorney at Law
P. O. Box 1988
Mobile, AL 36633

_____
James G. Curenton, Jr.

The Defendants added by this Amended Complaint will be served or given the opportunity to waive service of process at the following addresses:

(1)     Jim Hendrix
        16191 Adams Lane
        Summerdale, AL

CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 52

(2)     J. David Whetstone
      c/o District Attorney's Office
      Baldwin County Courthouse
      Bay Minette, AL 36507

(3)     Judy A. Newcomb
      c/o District Attorney's Office
      Baldwin County Courthouse
      Bay Minette, AL 36506


**PLAINTIFFS DEMAND TRIAL BY JURY.**

_____
James G. Curenton, Jr.


CIVIL ACTION NO. 99-AR-1644-S
AMENDED COMPLAINT
Page 53