# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

MICHAEL R. PARDUE,       )
                          )
      **Plaintiff,**         )
                          )
**vs.**                       )     **CIVIL ACTION NO. 99-0799-CG-M**
                          )
**CITY OF SARALAND, ALABAMA, <u>et. al.</u>,** )
                          )
      **Defendants**       )
                          )

## <u>ORDER</u>

In 1973, a jury convicted Michael Pardue of murder in Baldwin County, Alabama. Soon thereafter, Pardue pleaded guilty to two other murders in Mobile County, Alabama. In 1994, the Supreme Court of Alabama reversed the Baldwin County conviction, and a federal judge in this district issued a writ of habeas corpus for both of the Mobile County convictions. Pardue was then retried and convicted by a jury in 1995 for one of the Mobile County murders, but the Alabama Court of Criminal Appeals reversed that conviction the following year. The State of Alabama subsequently <u>nolle</u> <u>prossed</u> all thee of the murder charges.

Pardue filed the instant civil action on June 25, 1999. In his first amended complaint, Pardue asserted numerous claims under 42 U.S.C. § 1983 and state tort law against three local governments and twelve individuals, alleging that they conspired and/or acted under the color of state law to violate his rights protected by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and/or are liable under state law for conspiracy, malicious prosecution, outrage, wantonness, libel, and slander. (Doc. 52). On May 30, 2001, the late

Honorable Richard W. Vollmer entered an order which eliminated many of the claims and many of the defendants. (Doc. 126). On August 11, 2004, this court entered summary judgment dismissing the remaining federal claims as untimely and dismissing the state claims without prejudice. (Doc. 299). On May 27, 2008, the Court of Appeals for the Eleventh Circuit reversed this court's previous orders and remanded the case "because we believe the allegations contained in the complaints against the prosecutors should more appropriately be determined on a motion for summary judgment…" (Doc. 323).

On May 8, 2009, this court entered an order directing the parties "to review the file and confer with each other… to determine what issues are currently pending." (Doc. 345). On May 28, 2009, the parties filed a joint report of the remaining claims pending before the court. (Doc. 346). On April 6, 2010, this court dismissed the defendants, City of Saraland and Frank Mann, pro tanto. (Doc. 366). On June 29, 2010, Pardue voluntarily dismissed his claims against Charlie Graddick and Jim Hendrix. (Doc. 386). As a result, the only remaining claims pending before the court are as follows:

> (1) 42 U.S.C. § 1983 Fourth Amendment malicious prosecution claim against the Mobile County Assistant District Attorneys, Tom Harrison and Mike Davis, for their activities in 1995.
>
> (2) 42 U.S.C. § 1983 Fourteenth Amendment fabrication of evidence claim against Mobile County Assistant District Attorney, Willis Holloway, for his activities in 1973 regarding J.B. Duncan's shotgun.[1]

---

[1] The parties joint report maintains that "Count I § 1983 Fourteenth Amendment claim for fabrication of evidence" against Holloway remained. (Doc. 346, p. 2). Count I of his amended complaint states that "Defendant Holloway deprived Pardue of [in part, the Fourth Amendment due process of law] as described more fully in Paragraphs 32, 43, 55, 56, and 57." (Doc. 52, p. 37). Paragraph 32 is the only paragraph that discusses Holloway's alleged fabrication of evidence which is Holloway's alleged manipulation of the shotgun found at J.B. Duncan's home.

(3) State claims of malicious prosecution, outrage, wantonness and conspiracy to commit malicious prosecution claims against Department of Forensic Science's criminologist, Marion Sennett, for his activities in 1973 and against Mobile County Assistant District Attorneys, Tom Harrison and Mike Davis, for their activities in 1995.

(4) Outrage and wantonness claims against Mobile County Assistant District Attorney, Willis Holloway, for fabrication of evidence and failure to intervene in 1973.

This matter is now before the court on the motion of Mike Davis, Tom Harrison, Willis Holloway, and Marion Sennett's for summary judgment (Doc. 392), Pardue's response (Doc. 405), and the defendants' reply (Doc. 407). For the reasons stated below, the defendants' motion for summary judgment is due to be **GRANTED**.

## <u>FACTS</u>

At approximately 2:00 a.m. on May 22, 1973, the body of service station attendant, Ronald Rider, was discovered at the Thoni Service Station in Baldwin County, Alabama. (Doc. 52, ¶ 20). Rider had been struck in the head with a crowbar and killed by a shotgun wound, apparently during the course of a robbery. (Id., ¶ 22). Approximately four hours later, a motorist found the body of Will Harvey Hodges at the Double A Service Station in neighboring Mobile County. (Id., ¶ 20). A crime scene report indicated that two shots had been fired and that "there had to be two people present at the incident when Hodges was shot." (Id., ¶ 23).

At some point thereafter, Pardue was interrogated by the police, and over the course of the interrogation, Pardue maintains that he was beaten, starved, tortured, subjected to emotional abuse, deprived of sleep, and denied the ability to call his family and talk to a lawyer. (Id., ¶ 29). On the third day of his interrogation, Pardue confessed to killing Rider, Hodges, and a third person named Theodore White. (Id.). Pardue testified that he gave a false confession to comply with the threats of the police interrogators so that he could put on a "good show" for Mobile County Assistant District Attorney, Willis Holloway, when he would arrive. (Doc. 392-

6, Pardue Dep., pp. 6-8; Doc. 392-7, Pardue Dep., p. 9). He also testified that once Holloway arrived to the police station, he had no complaints about how he was treated by Holloway. (Doc. 392-6, Pardue Dep., p. 7). He further testified that while Holloway was there, "[e]verybody's laughing, friendly, and nice." (Id.). At one point, Holloway asked Pardue how he was being treated, and Pardue responded that the police were treating him well. (Doc. 392-9, Holloway Dep., p. 15; Doc. 392-7, Pardue Dep., pp. 8-9).

Also during this interrogation, Pardue told the police about a shotgun at the home of a friend, J.B. Duncan. (Doc. 52, ¶ 53). Some time later, the police and Holloway allegedly found a shotgun during the search of Duncan's home, but Pardue maintains that the shotgun was dusty and covered with cobwebs. (Id., ¶ 32). Pardue asserts that the police and Holloway then cleaned and oiled the shotgun with red rags and that the police planted the rags in John Brown's station wagon, only to "find" them on a later search after original searches had produced no evidence. (Id., ¶ ¶ 32, 53). Once the rags were "discovered", the shotgun was alleged to be the weapon that killed Rider and Hodges. (Id., ¶ 32). Alabama State Forensics Specialist, Marion Sennett, was present at the first and second search of John Brown's car and allegedly witnessed the "discovery" of the rags. (Id., ¶ 58). Pardue claims that Forensics Specialist Sennett knew and did not protest that his supervisor was ignoring the physical evidence and preparing official reports that contained false information to support the police's evidentiary needs. (Id.).

On July 10, 1973, Pardue was indicted for the murder of Rider. On August 14, 1973, he was convicted by a Baldwin County jury for first-degree murder of Rider. (Doc. 392-7, Pardue Dep., p. 11; Defendants' Ex. 3). In the underlying trial, Bobby Stewart, a sheriff's department investigator, testified that Pardue verbally confessed to him on May 23, 1973, that he killed Rider. (Doc. 392-7, Pardue Dep., p. 11; Defendants' Ex. 3, pp. 6, 13-17). Pardue was thereafter

sentenced to life in prison. (Defendants' Ex. 3, p. 36). Pardue appealed his conviction, but his court-appointed attorney, Chandler Standard, later dismissed the appeal of the Baldwin conviction without Pardue's permission. (Doc. 392-7, Pardue Dep., pp. 14-15). On July 20, 1973, Pardue was indicted for the murder of William Hodges. (Id., p. 13; Defendant's Ex. 4-B). On October 24, 1973, Pardue entered a guilty plea to the murder of Hodges and then was sentenced to life in prison. (Doc. 392-7, Pardue Dep., p. 13; Defendant's Ex.4-C).

On December 11, 1987, Pardue filed a Rule 20 (now Rule 32) petition in Baldwin County Circuit Court for relief from his 1973 conviction. (Doc. 392-7, Pardue Dep., p. 15; Defendant's Ex. 5). The petition was denied, and the Alabama Court of Criminal Appeals affirmed. Pardue v. State, 550 So.2d 1093 (Ala.Crim.App. 1989)(unpublished table opinion). On September 25, 1989, Pardue filed a petition for writ of habeas corpus in the United States District Court for the Southern District of Alabama, styled CV 89-688, Pardue v. Burton, et. al.. (Doc. 392-7, Pardue Dep., p. 15; Defendant's Ex. 6). On September 9, 1991, Magistrate Judge William Cassady issued a report and recommendation, finding defense counsel was deficient and ineffective in dismissing Pardue's appeal and that the petition for habeas corpus should be conditionally granted to allow an out-of-time appeal with the assistance of counsel. (Doc. 392-7, Pardue Dep., pp. 15-16; Defendant's Ex. 6-A). Pardue was thereafter granted an out-of-time appeal on the Baldwin conviction. (Doc. 392-7, Pardue Dep., p. 16; Defendant's Ex. 6-B). The Alabama Court of Criminal Appeals thereafter affirmed the conviction. Ex parte Pardue, 661 So.2d 263 (Ala.Crim.App. 1993). In 1994, on a petition for writ of certiorari, the Alabama Supreme Court reversed the Court of Criminal Appeals and the Baldwin County conviction on the grounds that the State failed to prove that the statements made to investigator Bobby Stewart on May 23, 1973, were voluntary and admissible. Ex parte Pardue, 661 So.3d 268 (Ala. 1994). The Baldwin

charge was ultimately dismissed on a motion to <u>nolle</u> <u>prose</u> on August 25, 1997. (Doc. 392-7, Pardue Dep., p. 16; Defendants' Ex. 6-C).

On January 26, 1988, Pardue filed a Rule 20 (now Rule 32) petition in the Mobile County Circuit Court for relief from his guilty plea and sentence, primarily on the grounds that he was not given the benefit of seeking youthful offender status. (Doc. 392-7, Pardue Dep., p. 17; Defendants' Ex. 7). The petition was denied, and on appeal, the Court of Criminal Appeals affirmed the denial. <u>Ex parte Pardue</u>, 566 So.2d 502 (Ala.Crim.App. 1990). Pardue then filed a petition for writ of habeas corpus in the federal district court for the Southern District of Alabama, styled CV 90-734, <u>Pardue v. Burton, et. al.</u>. (Doc. 392-7, Pardue Dep., p. 17). On September 9, 1991, the magistrate judge issued a report and recommendation that Pardue should be allowed to replead due to a failure to advise of his rights to apply for youthful offender status. (<u>Id.</u>). On October 7, 1991, the district judge entered an order and conditional judgment, indicating that Pardue should be allowed to seek the youthful offender status. (<u>Id.</u>, pp. 17-18). The State thereafter appealed to the Court of Appeals for the Eleventh Circuit, and on July 26, 1994, the Eleventh Circuit remanded the case to the district court to consider whether Pardue was aware of his rights to seek youthful offender status and whether he was denied effective assistance of counsel. <u>Pardue v. Burton</u>, 26 F.3d 1093 (11th Cir. 1994). After an evidentiary hearing on December 7, 1994, the district court granted the petition as to the youthful offender ground but denied it as to the effective assistance of counsel claim. (Doc. 392-7, Pardue Dep., p. 19).

In state court, Pardue pled not guilty to a new indictment for the murder of Hodges. (<u>Id.</u>, p. 25). Tom Harrison and Mike Davis, who were assistant district attorneys for Mobile County, lead the re-prosecution of Pardue. At the May 1995 trial in Mobile County, he was convicted

based primarily upon a tape-recorded confession he had given on May 25, 1973. (Id., p. 22). Also at this trial, Holloway and Cotton Long, who was Baldwin County Deputy Sherriff and one of the first law enforcement officers to arrive at the Rider murder scene, testified for the prosecution. (See Plaintiff's Ex. B & D). The plaintiff alleges that Harrison and Davis "willingly and intentionally permitted, without challenge or corrective measures," Holloway and Long's testimony which was "diametrically opposed to what they had previously sworn to in 1973." (Doc. 405, p. 3). Pardue appealed his conviction, and the Court of Criminal Appeals held that if the May 23, 1973, oral statement given to Stewart for the 1973 Baldwin County conviction was not admissible, then the May 25, 1973, statement given to the police for the Mobile County conviction was not proven to be voluntary either. Pardue v. State, 695 So.2d 199 (Ala.Crim.App. 1996). On June 25, 1997, the Mobile County District Attorney's office filed a motion to nolle prosequi the charge against Pardue for the murder of Hodges, which was granted that same day. (Doc. 392-7, Pardue Dep., Defendant's Ex. 13).

## LEGAL ANALYSIS

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in [the non-moving party's] pleading; rather, its response .... must – by affidavits or as otherwise

provided in this rule – set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotation and citation omitted).

## II. Tom Harrison and Mike Davis

As stated above, Pardue seeks recovery from the Mobile Assistant District Attorneys, Tom Harrison and Mike Davis, under a § 1983 Fourth Amendment claim for malicious prosecution and under state law claims for malicious prosecution, outrage, wantonness, and conspiracy to commit malicious prosecution for prosecuting Pardue in 1995. (See Doc. 346). In general, Pardue provides the following complaints about Harrison and Davis:

> (1) allowing witnesses to change their testimony and allegedly commit perjury;
>
> (2) introducing the April 25, 1973, taped confession;
>
> (3) failing to call certain witnesses that would have provided allegedly exculpatory testimony;
>
> (4) failing to produce allegedly exculpatory evidence; and
>
> (5) failing to produce discovery in the federal court habeas proceeding that resulted in Pardue being allowed to re-plead the Mobile charge.
>
> (Doc. 392-7, pp. 22-23; Doc. 405).

Harrison and Davis ask this court to grant their motion for summary judgment based on absolute immunity because "these claims involve the prosecutors' role as advocates for the State in prosecuting Pardue in 1995." (Doc. 392-1, pp. 12-13).

"A prosecutor enjoys absolute immunity from allegations stemming from the prosecutor's function as advocate." Jones v. Cannon, 174 F.3d 1271, 1281 (11th Cir. 1999). "Such absolute immunity 'extends to a prosecutor's acts undertaken in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State.'" Hart v. Hodges, 587 F.3d 1288, 1295 (11th Cir. 2009)(citing Jones, 174 F.3d at 1281; Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1279 (11th Cir. 2002). "'Although absolutely immune for actions taken as an advocate, the prosecutor  has only qualified immunity when performing a function that is not associated with his role as an advocate for the state.'" Id.(citing Jones, 174 F.3d at 1281-1282; accord Rowe, 279 F.3d at 1279-1280(prosecutor who proffered perjured testimony and fabricated exhibits at trial is entitled to absolute immunity, but a prosecutor who participated in the search of a suspect's apartment is entitled to only qualified immunity)).  "Prosecutors have absolute immunity when 'filing an information without investigation, filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence, refusing to investigate… complaints about the prison system, [and] threatening… further criminal prosecutions…'" Id.(quoting Henzel v. Gerstein, 608 F.3d 654, 657 (5th Cir. 1979);[2] citing Marx v. Gumbinner, 855 F.2d 783, 789 n. 10, 790 (11th Cir. 1988)(concluding that prosecutors have absolute

---

[2] The Court of Appeals for the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

immunity for rendering legal advice to police officers concerning the existence of probable cause to arrest)).

This court finds that Harrison and Davis's actions described above unquestionably fall within the category of actions protected by prosecutorial immunity under federal and state law.[3] These actions were a necessary and integral part of the prosecutor's role in the judicial system and were not investigative or administrative in nature. In fact, prosecutorial immunity extends to Harrison and Davis' alleged actions in "initiating and pursuing a criminal prosecution… even where the prosecutor knowingly used perjured testimony, deliberately withheld exculpatory information, or failed to make full disclosure of all facts." Prince v. Wallace, 568 F.2d 1176, 1178-1179 (5th Cir. 1978). Therefore, summary judgment is due to be granted against Pardue on his claims against Harrison and Davis.

### III. Willis Holloway

### A. Claim Under Federal Law

As stated above, Pardue seeks recovery from the Mobile County Assistant District Attorney, Willis Holloway, under a § 1983 Fourteenth Amendment claim that Holloway fabricated evidence by allegedly cleaning and oiling a dusty, cobweb-covered shotgun found at J.B. Duncan's home that was later allegedly introduced as evidence at the 1973 Baldwin County trial for the murder of Ronald Rider. (See Doc. 346; Doc. 52, ¶ 32). Holloway asks this court to grant the motion for summary judgment because qualified immunity bars Pardue's federal claim against Holloway since "Pardue has no evidence that Holloway fabricated evidence…"

---

[3] The Alabama Supreme Court has held that immunity under state law in a case dealing with prosecutorial immunity is "at least as broad as immunity under a § 1983 action." Bogle v. Galanos, 503 So.2d 1217, 1218-1219 (Ala. 1987); see also Walker v. Tillman, -- So.3d --, 2010 WL 2571354, at *2-3 (Ala.Civ.App. June 25, 2010).

and "Pardue cannot establish that Holloway's actions in allegedly participating in the search violated any established constitutional right in 1973." (Doc. 392-1, pp. 21 & 23).

This court notes that Holloway, despite his position as an assistant district attorney, would not be entitled to absolute prosecutorial immunity for this alleged action while participating in the search of Duncan's home. "Prosecutorial immunity does not apply when the prosecutor acts outside the ambit of activities 'intimately associated' with the judicial process." In other words, "the Supreme Court has made clear that prosecutorial immunity may not apply when a prosecutor is not acting as an officer of the court but is instead engaged in certain investigative or administrative tasks." Hart, 587 F.3d at 1296(citing Van de Kamp v. Goldstein, -- U.S. --, 129 S.Ct. 855, 861, 172 L.Ed.2d 706 (2009)). For example, "[t]hese activities include conducting investigative work before an arrest, making statements to the press, and providing legal advice to police regarding pre-indictment investigation techniques." Id.(internal citations omitted).

Nevertheless, Holloway may be entitled to qualified immunity for his investigatory actions. See Rowe v. City of Ft. Lauderdale, 279 F.3d 1271, 1280 (11th Cir. 2002). "Qualified immunity protects from civil liability government officials who perform discretionary functions if the conduct of the officials does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In order to be entitled to qualified immunity, Holloway must first establish that his conduct was within the scope of his discretionary authority. See Webster v. Beary, 228 Fed.Appx. 844, 848 (11th Cir. 2007)(per curiam); Lee v. Ferraro, 284 F.3d 1188, 1200 (11th Cir. 2002). "'A government official acts within [his] discretionary authority if the actions were (1)

undertaken pursuant to the performance of [his] duties and (2) within the scope of [his] authority.'" Jones v. City of Atlanta, 192 Fed.Appx. 894, 897 (11th Cir. 2006)(per curiam). Therefore, the proper inquiry in the present case is whether an assistant district attorney has the discretion to participate in search and seizures, if done for a proper purpose. See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998)("a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties."). This court finds that Holloway was within the scope of his discretionary authority in allegedly participating in the search of J.B. Duncan's home. See Rowe, 279 F.3d at 1280-1281)(finding that a prosecutor who participated in the search of an apartment is performing a discretionary governmental function).

The burden thus shifts to Pardue to demonstrate that qualified immunity is not appropriate using the two-prong test established by the Supreme Court in Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The first inquiry is, taken in the light most favorable to the non-moving party, "do the facts alleged show the officer's conduct violated a constitutional right?" Id.; see also Beshers v. Harrison, 495 F.3d 1260, 1265 (11th Cir. 2007)(quoting Scott v. Harris, 550 U.S. 372, 377, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)). If the court finds a violation of a constitutional right has been alleged based on the plaintiff's version of the facts, then the next question is whether the right was clearly established at the time of the violation. Saucier, 533 U.S. at 201; Scott, 550 U.S. at 377; Lee, 284 F.3d at 1194. The court must undertake the second inquiry "in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201.

Clearly, as a broad general proposition, "[a]n investigator's planting or fabricating evidence in an effort to obtain a conviction does violate clearly established law and therefore is

not protected by qualified immunity." Rowe, 279 F.3d at 1281(citing Jones v. Cannon, 174 F.3d 1271, 1289-1290 (11th Cir. 1999); Riley v. City of Montgomery, 104 F.3d 1247, 1253 (11th Cir. 1997)). However, in light of the specific context of this case, Pardue has not produced any evidence that Holloway fabricated any evidence.[4] In fact, Pardue admitted in deposition testimony that he has no evidence that Holloway even accompanied the police to Duncan's house. (Doc. 392-6, Pardue Dep., p. 11). Furthermore, Pardue has provided no evidence that Holloway personally fabricated or tampered with any evidence. (See Id., p. 13).

There has been no evidence presented that Holloway was even aware of tampered evidence. However, even is he was aware, while acting in an investigative role and protected only by qualified immunity, that others were tampering with evidence and took no action to stop them, Pardue has not cited, nor has this court found, any decision clearly establishing that a prosecutor's mere awareness of, as opposed to participation in, evidence fabrication or tampering violates the federal rights of a criminal defendant. See Rowe, 279 F.3d at 1281. To the contrary, in an analogous context, the Eleventh Circuit has held that a police officer did not violate clearly established law merely by failing to act in the face of knowledge that another officer had fabricated a confession. See Jones, 174 F.3d at 1286. Therefore, Holloway is entitled to qualified immunity from Pardue's federal claim for the actions Holloway personally took or failed to take with regards to the shotgun while in the investigator's role.

### B. Claims Under State-Law

Pardue also seeks recovery from Holloway under state law claims of wantonness and outrage for fabrication of evidence and failure to intervene. (Doc. 346, p. 2). As stated above

---

[4] Furthermore, in his response, Pardue does not refute Holloway's assertions as to the fabrication or tampering of the shotgun. (Doc. 405).

with regards to his federal claim, Pardue maintains that Holloway and the police fabricated evidence by allegedly cleaning and oiling a dusty, cobweb-covered shotgun found at J.B. Duncan's home that was later allegedly used at the 1973 Baldwin County trial for the murder of Ronald Rider. (See Doc. 52, ¶¶ 32, 87, 89; Doc. 126, p. 111-112, n. 68 & 70). Moreover, Pardue asserts that "Holloway made no effort to stop the illegal interrogation of Pardue" in 1973 by the police. (See Doc. 52, ¶ 55, 87, 89; Doc. 126, pp. 111-112, n. 68 & 70). Holloway asks this court to grant his motion for summary judgment because either "the two claims against Holloway for outrage and wantonness are… barred by state agent immunity" or "[t]here is no evidence to support Pardue's claims of outrage or wantonness against Holloway." (Doc. 392-1, p. 31 & 33).

First, with regard to Pardue's state-law claims concerning Holloway's alleged fabrication of evidence, this court again finds that Pardue has presented no evidence that Holloway was actually present at the search of Duncan's home or that he had fabricated any evidence. In fact, in his response, Pardue does not even mention Holloway's participation in the fabrication or tampering of the shotgun. (See Doc. 405). In the absence of any admissible evidence as to his state-law claim of fabrication of evidence, the plaintiff has not met his burden as the non-movant party on summary judgment. See Fed.R.Civ.P. 56(e)(2)("**Opposing Party's Obligation to Respond.** When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegation in its own pleading; rather, its response must-by affidavits or as otherwise provided in this rule-set out specific facts showing a genuine issue for trial."); see also Fed.R.Civ.P. 56(c)(1)(A)-(B)(explaining the burden of nonmovant to include "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made

for purposes of the motion only), admissions, interrogator answers, or other materials"; or showing "deficiencies in movant's summary judgment materials).

This court recognizes Pardue's pro se status and the fact that the allegations of a pro se complaint, "however inartfully pleaded" are held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). However, Pardue's pro se status does not excuse him from compliance with applicable procedural rules, including the Rule 56 requirement for non-moving parties. See Local Rule 83.9(b)("All litigants proceeding pro se shall be bound by and comply with all local rules of this Court, and the Federal Rules of Civil and Criminal Procedure, unless otherwise excused from operation of the rules by court order."); Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989)(a pro se litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure"). Additionally, the leniency afforded pro se litigants does not give the courts a license to serve as de facto counsel for such litigants. See GJR Investments Inc. v. County of Escambia, Fla., 132 F.3d 1359, 136 9 (11th Cir. 1998).

Second, with regard to Pardue's state-law claims against Holloway for his failure to intervene, this court finds that these claims are barred by state-agent immunity. "Under Alabama law, '[s]tate-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities." Brown v. City of Huntsville, Ala., 608 F.3d 724, 740 (11th Cir. 2010)(quoting Ex parte Hayles, 852 So.2d 117, 122 (Ala. 2002)). This doctrine, which derives from provisions of the Alabama Constitution, formerly turned on whether the defendant was engaged in a discretionary function. See e.g., DeStafney v. Univ. of Ala., 413 So.2d 391, 392-395 (Ala. 1981). However, the Supreme Court reformulated the state-

agent immunity rule in <u>Ex parte Cranman</u>, 792 So.2d 392, 405 (Ala. 2000).[5]  In <u>Cranman</u>, the

Supreme Court held that state agents are entitled to immunity for conduct that falls into one or

more of five enumerated categories, one of which is "exercising judgment in the enforcement of

the criminal laws of the State, including but not limited to, law-enforcement officers'…"

<u>Cranman</u>, 792 So.2d at 405 <u>modified by</u> <u>Hollis v. City of Brighton</u>, 950 So.2d 300, 309 (Ala.

2006).  The Alabama Supreme Court has "established a 'burden shifting' process when a party

raises the defense of State-agent immunity."  <u>Giambrone v. Douglas</u>, 874 So.2d 1046, 1052 (Ala.

2003)(citation omitted).  First, in order to claim state-agent immunity, Holloway "bear[s] the

burden of demonstrating that [Pardue's] claims arise from a function that would entitle them to

immunity." <u>Id.</u>(citations omitted).  If Holloway makes such a showing, "the burden then shifts to

[Pardue], who, in order to deny the [Holloway] immunity from suit, must establish that

[Holloway] acted willfully, maliciously, fraudulently, in bad faith, or beyond [his] authority.."

<u>Id.</u>(citations omitted).

    This court finds, and Pardue does not dispute, that Holloway's participation in the

interrogation of Pardue was directly related to his exercise of judgment as a Mobile County

Assistant District Attorney in the enforcement of the criminal laws of the state.  (<u>See</u> Doc. 405,

¶ ¶ 14, 24-32, 34, 36-37).  It is undisputed that Holloway was present for the May 25, 1973,

recorded confession as a representative of the district attorney's office.  (Doc. 392-9, Holloway

Dep., p. 10; Doc. 405, ¶ 14).  Holloway also testified that while at the police station, he had

called his boss, District Attorney Randy Butler, to discuss the murder investigation of Pardue.

(Doc. 392-9, Holloway Dep., p. 15).

---

[5] Although <u>Cranman</u> was a plurality decision, the Alabama Supreme Court adopted the
<u>Cranman</u> immunity test in <u>Ex parte Butts</u>, 775 So.2d 173, 177-178 (Ala. 2000).

Since Pardue's claims arise from a function that would entitle Holloway to immunity, the burden shifts to Pardue to establish that Holloway acted willfully, maliciously, fraudulently, in bad faith or beyond his authority in failing to intervene. Pardue, however, does not argue or provide any evidence that Holloway acted willfully, maliciously, in bad faith or beyond his authority in failing to intervene in his 1973 interrogation. Pardue testified that he gave a false confession to comply with the threats of the police interrogators so that he could put on a "good show" for Holloway when he arrived. (Doc. 392-6, Pardue Dep., pp. 6-8; Doc. 392-7, Pardue Dep., p. 9). Pardue testified that once he arrived, Holloway was nice to him and that he had no complaints about how he was treated by Holloway. (Doc. 392-6, Pardue Dep., p. 7). He further testified that while Holloway was there, "[e]verybody's laughing, friendly, and nice." (Id.). Holloway even asked Pardue how he was being treated, and Pardue responded that the police were treating him well. (Doc. 392-9, Holloway Dep., p. 15; Doc. 392-7, Pardue Dep., pp. 8-9). This court finds that any alleged mistreatment of Pardue by the police occurred prior to Holloway's arrival to the police station and there is no evidence that Holloway was even aware of the specific mistreatment of Pardue by the police during the interrogation. Therefore, Pardue has failed in his burden and Holloway is entitled to state-agent immunity from Pardue's state-law claims for the actions Holloway personally took or failed to take with regards to intervening in the alleged mistreatment of Pardue by the police in 1973. In light of the foregoing, the defendant's motion for summary judgment as to Pardue's remaining claims against Holloway is due to be granted.

### IV. Marion Sennett

Pardue also seeks recovery from Forensic Sciences criminalist, Marion Sennett, under state law claims of malicious prosecution, outrage, wantonness, and conspiracy to commit

malicious prosecution.  (Doc. 346; see also Doc. 126-1, pp. 82 & 92).  Sennett asks this court to grant his motion for summary judgment because "[t]here is no evidence to support the state law claims against Sennett."  (Doc. 392-1, p. 30).  The court agrees and finds that summary judgment as to Marion Sennett is due to be granted.

First, "[t]he essential elements of a cause of action for malicious prosecution are well known: (1) a judicial proceeding initiated by the defendant; (2) the lack of probable cause; (3) malice on the part of the defendant; (4) termination of the judicial proceedings favorably to the plaintiff; and (5) damages."  Gulf States Paper Corp. v. Hawkins, 444 So.2d 381, 387 (Ala. 1983)(citations omitted).  Second, in order to prove conspiracy to commit malicious prosecution, a plaintiff must show that the defendant agreed with at least one other person "to accomplish an unlawful end (by civil law standards) or to accomplish a lawful end by unlawful means." Eidson v. Olin Corp., 527 So.2d 1283, 1285 (Ala. 1988)(citing Barber v. Stephenson, 260 Ala. 151, 69 So.2d 251 (Ala. 1953)).  Third, "[t]he tort of outrage requires that: (1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) that the distress was severe."  Harris v. McDavid, 553 So.2d 567, 569-570 (Ala. 1989)(citation omitted).  "With respect to the conduct element, [the Alabama Supreme Court] has stated that the conduct must be 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'"  Id. at 570(Am. Road Service Co. v. Inmon, 394 So.2d 361, 365 (Ala. 1980)).  Fourth, the Alabama Supreme Court has defined "wanton conduct" as the following:

> "'[The] doing of some act or something with reckless indifference to the consequences of said act, or… a failure or omission to do something with reckless

indifference to the consequences of such failure or omission, that is, that the party acting or failing to act is conscious of his conduct, and even though without any actual intent to injure is aware from his knowledge of existing circumstances and conditions that his conduct would probably result in injury to another or in damage to his property.'"

Weatherly v. Hunter, 510 So.2d 151, 152 (Ala. 1987)(quoting W.T. Ratliff Co. v. Purvis, 291 So.2d 289 (Ala. 1974)).

After a review of the record in a light most favorable to the plaintiff, this court finds that a trier of fact could not reasonably conclude that Sennett is liable for the above state law claims. Sennett testified that he had "helped" in a search of John Brown's vehicle on June 1, 1973, and that he authored three reports regarding the physical evidence he examined -- reports which merely establish that Sennett was involved with the search of John Brown's vehicle and provide that an "[e]xamination of the automobile did not disclose any bloodstains." . (Doc. 392-10, Sennett Dep., pp. 7-8, 18-20). Pardue does not claim, nor does the court find, any false, fabricated, or inaccurate information in these three reports. (See Doc. 392-6, Pardue Dep., pp. 16 & 18). Sennett further testified that he did not see the deceased or even photographs of the deceased (Id., p. 12); that he did not view any bullet wounds (Id.); and that he never examined any rags, any clothing belonging to Purdue, or any shotgun. (Id., pp. 9 & 15). Moreover, Sennett testified that he did not initiate the prosecution of Pardue, that he did not have any involvement in the decision to prosecute Pardue, and that he was not responsible for determining if there was probable cause. (Id., p. 17). Lastly, Sennett testified that he did not have any reason to believe that anyone with the Alabama Department of Forensic Sciences, the police department or sheriff's department ever fabricated evidence against Pardue. (Id., pp. 16-17). In their response, Pardue does not contest any of the defendant's arguments with regard to Sennett and does not present any evidence contradicting Sennett's testimony. (See Doc. 405). In light of the foregoing, viewing the evidence in a light most favorable to the plaintiff, this court finds that a

reasonable jury could not conclude from the undisputed evidence that Sennett is liable for any of the above state-law claims, thus summary judgment as to Sennett is due to be granted.

## CONCLUSION

After due consideration of all matters presented and for the reasons set forth above, it is **ORDERED** that the defendants' motion for summary judgment (Doc. 392) is **GRANTED**.

**DONE and ORDERED** this 14th day of January, 2011.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE